UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

 UNITED STATES OF AMERICA

    -v-                                  No. 15 CR 616 (KBF)

**DARCY WEDD,** *et al.,*

                **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM IN SUPPORT
OF DEFENDANTS' RULE 12 MOTION**


                              Jonathan Savella, Esq.
                              810 Seventh Avenue, Ste. 620
                              New York, New York 10019
                              (646) 801-2184

                              Law Offices of Marc S. Nurik
                              1551 Manning Avenue #302
                              Los Angeles, California 90024
                              (310) 909-6828

                              *Attorneys for Fraser Thompson*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT ......................................................................................................................... 1

   A. BACKGROUND ............................................................................................................ 1

   B. THE POST-TRIAL "SUPERSEDER" ...................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    THE INDICTMENT FAILS TO ALLEGE A COGNIZABLE VIOLATION
     OF THE AGGRAVATED IDENTITY THEFT STATUTE ............................ 3

   A. THE STATUTORY TEXT ........................................................................................ 4

   B. LIMITING § 1028A'S SCOPE: *UNITED STATES V. MILLER* ...................... 7

   C. *MILLER* APPLIED .................................................................................................... 9

   D. CONCLUSION ........................................................................................................ 10

II.   IF § 1028A IS TO BE CONSTRUED TO COVER EVERY UNLAWFUL
     "USE" OF AN IDENTIFYING NAME OR NUMBER, THE STATUTE IS
     VOID FOR VAGUENESS ........................................................................................ 10

CONCLUSION ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**

*Bailey v. United States*, 516 U.S. 137 (1995) ................................................................................ 5

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) ........................................................................... 7, 12

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ............................................................... 10, 12

*Kolender v. Lawson*, 461 U.S. 352 (1983) .................................................................................. 10

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ........................................................................................... 5

*Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003) ............................................................ 4

*Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) ............................................................. 7, 11

United States v. Aleynikov, 676 F.3d 71 (2d Cir. 2012) ................................................................ 3

United States v. Berroa, 856 F.3d 141 (1st Cir. 2017) ................................................... 6, 8, 9, 11

United States v. Gabinskaya, 829 F.3d 127 (2d Cir. 2016) .......................................................... 6

United States v. Greenberg, 835 F.3d 295 (2d Cir. 2016) .......................................................... 11

United States v. Heicklen, 858 F. Supp. 2d 256 (S.D.N.Y. 2012) ................................................ 3

United States v. Henderson, 439 Fed. App'x 56 (2d Cir. 2011) ................................................. 11

United States v. Lange, 834 F.3d 58 (2d Cir. 2016) ..................................................................... 6

United States v. Medlock, 793 F.3d 700 (6th Cir. 2015) .............................................................. 9

United States v. Miller, 734 F.3d 530 (6th Cir. 2013) .........................................................passim

United States v. Pichardo, No. 13-cr-172, 2013 WL 6003514 (S.D.N.Y. Nov. 13, 2013) 11

United States v. Pirro, 212 F.3d 86 (2d Cir. 2000) ....................................................................... 3

United States v. Spears, 729 F.3d 753 (7th Cir. 2013) (*en banc*) ............................... 5, 6, 10, 12

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) ..................................................................... 3

United States v. Weaver, --- F.3d ----, 2017 WL 2661596 (2d Cir. June 21, 2017) ............. 6

*Wiltshire v. U.S.*, No. 11-cv-866, 2011 WL 4336675 (S.D.N.Y. Sept. 14, 2011) ............ 11

**STATUTES & RULES**

18 U.S.C. § 1028 ................................................................................................................... 4, 5

18 U.S.C. § 1028A ..............................................................................................................passim

Fed. R. Crim. P. 12 ................................................................................................................. 2

## STATEMENT

Darcy Wedd, Fraser Thompson and Christopher Goff ("Defendants") submit this memorandum in support of their joint motion to dismiss Count Four and Count Seven of the Third Superseding Indictment ("S3").

### A. BACKGROUND

This matter, as the Court knows, came to trial in April of this year. The operative indictment at that time, which we refer to here as "S2," contained three broadly-drawn counts, charging Defendants in: (1) a mail/wire fraud conspiracy spanning from 2011 to 2013; (2) a substantive wire fraud scheme during the same time period; and (3) a related money laundering conspiracy. This trio of charges arose from Defendants' alleged participation "in a multi-million dollar scheme to defraud mobile phone customers . . . by placing unauthorized charges for premium text messaging services on the [customers'] cellular phone bills through a practice known as 'auto-subscribing.'" S2 at ¶ 1.

After nearly four weeks of testimony and two days' deliberation, the jury proved unable to reach a verdict on any charge. The Court declared a mistrial on May 3.

### B. THE POST-TRIAL "SUPERSEDER"

With S3, handed down on June 5, the government manages to both streamline its case and broaden the potential grounds for conviction. It accomplishes this feat in three ways. First, S3 sheds its forebearer's narrative description of the alleged scheme in favor of a bare-bones recitation of essential facts and statutory texts. Second, S3

divides each of S2's counts in two, opening the door to a split verdict at Defendants' second trial.

Third, and most significantly for purposes of this Motion, S3 introduces a brand new theory of culpability. Its twin charges of "Aggravated Identity Theft" (18 U.S.C. § 1028A), denominated count "THREE" and "SEVEN," allege that Defendants, "during and in relation to" the auto-subscribing scheme underlying the substantive wire fraud counts, "used the telephone numbers of consumers without authorization." S3 at ¶¶ 4, 11.

Assuming they survive this challenge, the identity theft charges will substantially raise the stakes at Defendants' second trial. Each violation of § 1028A carries a mandatory "term of imprisonment of 2 years" on top of "any other term of imprisonment imposed." 18 U.S.C. §§ 1028A(a)(1) & (b)(1)-(2).

## ARGUMENT

Defendants move against the identity theft counts on two grounds. First, the charges are facially deficient because the alleged autosubscribing scheme did not, as a matter of law, involve a proscribed "use" of another's "means of identification" under § 1028A(a)(1). *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Second, to the extent "auto-subscribing" falls within § 1028A's ambit, the statute is unconstitutionally vague as applied to defendants.

## I. THE INDICTMENT FAILS TO ALLEGE A COGNIZABLE VIOLATION OF THE AGGRAVATED IDENTITY THEFT STATUTE

"[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (*citing United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000)). Such a challenge does not question a charge's "specificity, but rather is an argument that the facts alleged do not constitute an offense as a matter of law." *United States v. Heicklen*, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012).

The question here is whether "auto-subscribing" (S3 at ¶¶ 4, 11) constitutes a prohibited "use" of "another person['s]" telephone number within the meaning of § 1028A. Although S3 omits a technical description of auto-subscribing, the scheme's mechanics are fully explained in S2 and the record of Defendants' first trial. *Cf. United States v. Walsh*, 194 F.3d 37, 45-46 (2d Cir. 1999) (evaluating indictment in light of the "record as a whole"). A brief summary of the allegations serves as a primer to Defendants' challenge.

Auto-subscribing is a computerized means of "spoof[ing]" the "verification" process by which a mobile phone subscriber enrolls in a "Premium SMS" service. S2 at ¶¶ 9, 18. A legitimate enrollment process typically entails four steps: (1) A subscriber submits his mobile phone number to a Premium SMS "content provider['s]" website; (2) The content provider responds with a "PIN message" containing a randomly generated code; (3) The subscriber submits the aforementioned code to the content

3

provider's website; and (4) The content provider confirms receipt of the code with a "Welcome message." S2 at ¶ 9; Trial Tr. 231-34, 1273-74.

An auto-subscription program eliminates the first and third steps, sending unprompted "PIN" and "Welcome" messages to any mobile telephone number supplied to it. S2 at ¶¶ 18-19. Upon receipt of the messages, passive subscribers are enrolled in, and charged for, the perpetrator's Premium SMS service. *Id.*; *see* Trial Tr. 231-34.

With these facts in mind, we turn to the text of § 1028A. *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003) ("Every exercise in statutory construction must begin with the words of the text.").

### A. THE STATUTORY TEXT

Captioned "Aggravated identity theft," § 1028A reads in relevant part:

> (1) In general.--Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or *uses*, without lawful authority, a *means of identification* of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

§ 1028(A)(a)(1) (emphasis supplied). The phrase "means of identification" is statutorily defined to include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). Neither § 1028A or its neighbors offer a definition of the term "uses." *United States v. Miller*, 734 F.3d 530, 541 (6th Cir. 2013).

4

S3 closely tracks the language of § 1028A. Both identity theft counts charge Defendants with having "*used* the telephone numbers of consumers without authorization as part of their fraudulent auto-subscribing scheme." S3 at ¶¶ 4, 11 (emphasis supplied). Admittedly, English speakers will detect nothing anomalous about the appearance of the statutory term "uses" in this sentence. To the contrary, it comports with "ordinary and natural" definition of "[to] use," which in the most generic sense, means "to employ" or "carry out a purpose or action by means of." *Bailey v. United States*, 516 U.S. 137, 145 (1995).

The analysis does not end there, however. Interpretation depends on statutory context, "[p]articularly when interpreting a statute featuring as elastic a word as 'use.'" *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). In the case of the already amorphous § 1028A(a)(1), reading "uses" to mean "employs" would endow the statute with what Judge Easterbrook euphemistically termed "a surprising scope." *United States v. Spears*, 729 F.3d 753, 756 (7th Cir. 2013) (*en banc*). Surprising indeed: it is difficult to conceive of a fraudulent scheme in which a perpetrator *would not* in one way or another employ a "name or number that may be used, alone or in conjunction with any other information, to identify" another person. § 1028(d)(7); *see* § 1028A(c)(5) (providing for section's application to "any provision contained in chapter 63," including those "relating to mail, bank, and wire fraud").

A perusal of the fraud prosecutions featured in several recent Second Circuit opinions drives home the point. Consider:

- The "salespeople" who peddled worthless vending machines in *United States v. Weaver* "routinely" initiated "follow up [phone] conversations" in which they delivered false assurances to victims, --- F.3d ----, 2017 WL 2661596, at *1 (June 21, 2017);

- The fraudsters in *United States v. Lange* who, as part of a boiler-room investment scheme, used a "sales lead list" to identify and "cold-call[] potential investors," 834 F.3d 58, 66-67 (2016); or

- The absentee doctor in *United States v. Gabinskaya* who, in an attempt to mislead an insurance company about her duties at a fraudulent health clinic, "specifically named [one] Adelaida Martinez as [her] patient" when, in fact, Ms. Martinez "was never interviewed or otherwise seen by any [clinic] doctor." 829 F.3d 127, 131 (2016).

If "uses" in § 1028A(a)(1) is to be read expansively, then each of these cases – and, no doubt, hundreds more – involved unprosecuted identity thefts. *Cf. United States v. Berroa*, 856 F.3d 141, 156 (1st Cir. 2017) (observing that if § 1028A(a)(1) "is to be given its broadest possible meaning, it could encompass every instance of specified criminal misconduct in which the defendant speaks or writes a third party's name.").

This proposition raises judicial eyebrows, *see Spears*, 729 F.3d at 756, and grave constitutional problems. After all, a criminal statute that is at once universally applicable and selectively applied collides head-on with "the most fundamental protections of the

6

Due Process Clause." *Farrell v. Burke*, 449 F.3d 470, 484-85 (2d Cir. 2006) (Sotomayor, J.); *see Thibodeau v. Portuondo*, 486 F.3d 61, 66 (2d Cir. 2007) (due process requires statutes to "provide explicit standards" to forestall both "*ad hoc* and subjective" enforcement and "arbitrary and discriminatory application").

### B. LIMITING § 1028A'S SCOPE: *UNITED STATES V. MILLER*

Confronted with this spectre, the Sixth Circuit proposed a constrained reading of § 1028A(a)(1). *Cf. Skilling v. United States*, 561 U.S. 358, 406 (2010) ("consider[ing] whether [a statute] is amenable to a limiting construction" before "striking" it as "impermissibly vague"). In *United States v. Miller*, 734 F.3d 530 (6th Cir. 2013), the defendant, a David Miller, and his "pastor" formed an LLC to raise $900,000 for the purchase of a farm. *Id.* at 534. Several investors contributed a total of $675,000 to the venture, each joining Miller and the pastor as "members" of the LLC. *Id.* Miller, acting on behalf of the LLC but without the knowledge of any member besides the pastor, then sought a bank loan for the difference. *Id.* To secure the loan, Miller and the pastor signed a "resolution" declaring that the LLC's members had met and "unanimously voted to allow the property to be pledged as a collateral" for the loan. *Id.* at 535. In fact, no meeting had occurred and, if it had, the other members would not have agreed to Miller's plan. *Id.*

Miller was eventually convicted of two counts of making false statements to a bank, *see* 18 U.S.C. § 1014, and two counts of aggravated identity theft under § 1028A. *Miller*, 734 F.3d at 536. With respect to the latter, the government posited that Miller

7

had "'used'" the names of LLC members when he "included [them]" in the fake "resolution" and "mispresent[ed]" his "authority to act on [their] behalf." *Id.* at 539. On appeal, Miller contended that while § 1028A was implicated when "one 'uses' a person's name . . . [to] pass[] himself off as that person or act[] on behalf of that person," merely invoking a name in order to "lie[] about what [the named party] *did*" fell outside the statute's purview. *Id.* at 541.

The panel ultimately adopted the defense's view. Examining the text of § 1028A(a)(1), the court noted that the "broad, dictionary definition of 'use[]' is narrowed by ['uses'] placement *near* and *after* 'transfers' and 'possesses,' both of which are specific kinds of use." *Miller*, 734 F.3d at 541. Because an expansive construction of "use" would render the other two terms meaningless, the court reasoned that Congress must have deployed the term "use[s]" in a more limited sense. *See id.* (finding no legislative history indicating "that Congress intended § 1028A to cover defendants falsely claiming that other[s] . . . did things [] they actually did not do").

Unable to discern exactly what "uses" meant in § 1028A(a)(1), the *Miller* panel concluded that the "rule of lenity" required it "to resolve the uncertainty in [the defendant's] favor." 734 F.3d at 542. Accordingly, it held that Miller, by invoking the LLC members' names to manufacture their consent to the loan, had not "use[d] a means of identification within the meaning of § 1028A." *Id.*; *see also Berroa*, 856 F.3d at 155 (adopting *Miller*'s conclusion that § 1028A(a)(1) "require[s] that the defendant attempt

8

to pass him or herself off as another [] or purport to take some other action on another['s] behalf"); *United States v. Medlock*, 793 F.3d 700, 705 (6th Cir. 2015) (same).

### C. *MILLER* APPLIED

If the First and Sixth circuits' interpretation is correct, auto-subscribing falls well outside § 1028A's scope. The following three analogies to *Miller* demonstrate why.

*First*, the core function of an "Auto-Subscription Platform" is the creation of false records, *i.e.*, unsolicited "PIN" and "Welcome" text messages. S2 at ¶ 18-19. Like the phony resolution in *Miller*, the auto-subscribing messages make it appear that mobile phone customers "did [a] thing[, *i.e.*, subscribe to a Premium SMS service,] that they actually did not do." *Miller*, 735 F.3d at 541.

*Second*, auto-subscription does not involve impersonation. *See Berroa*, 856 F.3d at 155 (citing *Miller* for the proposition that § 1028A violations involve "pass[ing] . . . [one]self off as another person or purport[ing] to take some [] action on another[']s behalf"). Just as the resolution in *Miller* bore the perpetrator's own signature, 734 F.3d at 535, the text messages generated in an auto-subscription scheme are attributed to the content provider. *See* S2 at ¶¶ 9, 18.

*Third*, the perpetrator of an auto-subscribing scheme does not "'obtain anything of value in [a victim's] name[].'" *Berroa*, 856 F.3d at 157. By causing unauthorized Premium SMS "charges [to] appear on [a] consumer's mobile phone bill," auto-subscribing *tricks* victims into paying for an unordered service. S2 at ¶ 9. Unlike an identity theft, then, auto-subscribing does not involve making or receiving payment in

9

the victim's name. *Cf. Spears*, 729 F.3d at 757 (observing that identity theft's "usual victim" finds himself "out of pocket (where the thief uses information to buy from merchants) or may be put to the task of rehabilitating a damaged reputation or credit history").

### D. CONCLUSION

As construed in *Miller* and subsequent cases, § 1028A(a)(1)'s ban on unlawful "uses" of others' "means of identification" does not encompass Defendants' alleged conduct. Counts Three and Seven must, therefore, be dismissed.

## II. IF § 1028A IS TO BE CONSTRUED TO COVER EVERY UNLAWFUL "USE" OF AN IDENTIFYING NAME OR NUMBER, THE STATUTE IS VOID FOR VAGUENESS

The constitutional guarantee of due process demands that laws meet two fundamental norms: they must provide "fair warning" to those who follow them and "explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). A loosely worded statute runs afoul of the latter requirement because it "delegates" legislative prerogatives to executive and judicial actors, thereby encouraging "arbitrary and discriminatory enforcement." *Id.*; *see Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (warning that a penal statute lacking "minimal guidelines to govern [its] enforcement" may be construed according to the "personal predilections" of "policemen, prosecutors, and juries") (internal quotation marks and citations omitted).

So it is with § 1028A(a)(1). Construed broadly, the statute potentially "encompass[es] every instance of [fraud] in which the defendant speaks or writes a third

10

party's name" or, for that matter, dials their telephone number. *Berroa*, 856 F.3d at 156. Because virtually every fraud must entail a "use[]" of "another person['s]" identifying name or number, the decision to apply § 1028A(a)(1) in a particular case comes down to the government's "arbitrary whims and predilections." *Thibodeau*, 486 F.3d at 67.

Section 1028A's abrupt appearance in the extra-innings of this case exemplifies prosecutorial caprice. Plainly, the new charges did not result from some recent development in the government's investigation. Far from it: the September 2015 indictment's detailed description of auto-subscribing's mechanics – including its "large" appetite for others' "mobile phone numbers" (ECF No. 51 at ¶¶ 8, 16-17) – are the very same allegations underlying S3's § 1028A charges. Prosecutors, then, have known of the so-called identity theft for nearly two years.

It is unlikely that the omission of § 1028A charges from Defendants' previous indictments was an oversight. This, after all, is not a millrun aggravated identity theft case. Indeed, research suggests that S3 commenced the first § 1028A(a)(1) prosecution for unauthorized "use[]" of another person's telephone number.[1] *See Thibodeau*, 486 F.3d

---

[1] It also appears that Southern and Eastern District prosecutors have hitherto limited § 1028A(a)(1) to cases in which "the defendant attempt[ed] to pass him[self] . . . off as another person or purport[ed] to take some other action on another person's behalf." *Berroa*, 856 F.3d at 156; *see, e.g.*, *United States v. Greenberg*, 835 F.3d 295, 297 (2d Cir. 2016) (defendant's online retail operation made "unauthorized . . . charges to credit cards of customers"); *United States v. Henderson*, 439 Fed. App'x 56, 60 (2d Cir. 2011) (defendant used "counterfeit credit card bearing his name and [another person's] encoded account number"); *United States v. Pichardo*, No. 13-cr-172, 2013 WL 6003514, at *1 (S.D.N.Y. Nov. 13, 2013) (defendant submitted "passport application" using another man's name, "social security number, birth certificate, and . . . driver's license"); *Wiltshire v. U.S.*, No. 11-cv-866, 2011 WL 4336675, at *1 (S.D.N.Y. Sept. 14, 2011) (defendant "us[ed] the names, social security numbers and dates of births of persons in order to obtain [fraudulent] student loan[s]").

at 67-68 ("as-applied" vagueness challenges strongest where prosecution targets conduct outside "the core of [the challenged] statute's prohibition").

S3's § 1028A(a)(1) counts are thus doubly novel: they posit a fresh theory of Defendants' liability based on a groundbreaking interpretation of an elastic statutory text. Such innovation – the fruit of "clever prosecutors riffing on equivocal language," *Spears*, 729 F.3d at 758 – violates due process's ban on "*ad hoc* and subjective" enforcement. *Farrell*, 449 F.3d at 485 (quoting *Grayned*, 408 U.S. at 108-09). Dismissal of the § 1028A charges must follow.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss S3's Aggravated Identity Fraud counts.

Dated:   New York, NY
         July 12, 2017

                                                  Respectfully submitted,

                                                  _____/s/_____
                                                  Jonathan Savella, Esq.
                                                  810 Seventh Avenue, Ste. 620
                                                  New York, New York 10019
                                                  (646) 801-2184
                                                  jonathan.savella@gmail.com

                                                  Marc S. Nurik, Esq.
                                                  Law Offices of Marc S. Nurik
                                                  1551 Manning Avenue #302
                                                  Los Angeles, California 90024
                                                  (310) 909-6828
                                                  marc@nuriklaw.com

                                                  *Attorneys for Defendant Fraser Thompson*