UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                                :

   UNITED STATES OF AMERICA        :

                                                        :   S3 15 Cr. 616 (KBF)

                    - v. -                   :

   DARCY WEDD, et al.,                  :

                         Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' RULE 12 MOTION**


                                                                                  JOON H. KIM
                                                                                  Acting United States Attorney for the
                                                                                  Southern District of New York
                                                                                  One St. Andrew's Plaza
                                                                                  New York, New York 10007

Sarah E. Paul
Richard Cooper
Jennifer L. Beidel
Assistant United States Attorneys
     -Of Counsel-

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
   UNITED STATES OF AMERICA                   :
                                              :   S3 15 Cr. 616 (KBF)
              - v. -                          :
                                              :
   DARCY WEDD, et al.,                        :
                                              :
                          Defendants.         :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motion of defendants Darcy Wedd ("Wedd"), Fraser Thompson ("Thompson"), and Christopher Goff ("Goff") (collectively, the "defendants") to dismiss Counts Three and Seven of the operative indictment ("Def. Mem.").

## BACKGROUND

On June 5, 2017, a grand jury in the Southern District of New York returned a superseding indictment (the "Indictment") charging the defendants in eight counts. Count Three of the Indictment charged defendants Wedd and Goff, among others, with aggravated identity theft in violation of Title 18, United States Code, Sections 1028A & 2. Count Seven of the Indictment charged Wedd and Thompson, among others, with violating Section 1028A & 2. Defendants now argue that Counts Three and Seven of the Indictment should be dismissed, contending that, *first*, auto-subscribing does not involve the "use" of a means of identification and, *second*, that Section 1028A is unconstitutionally vague as applied to the defendants. For the reasons set forth below, neither of these arguments has merit, and the motion to dismiss should be denied.

1

**DISCUSSION**

**I.    THE INDICTMENT PROPERLY ALLEGES THE "USE" OF A MEANS OF IDENTIFICATION**

The defendants first argue that as a matter of law, the fraud alleged in the Indictment does not involve the "use" of victims' telephone numbers, pursuant to 18 U.S.C. § 1028A(a)(1). The Government expects the proof at trial to establish that the auto-subscribing fraud involved collecting the phone numbers of third-party victims, causing those phone numbers to be auto-subscribed, and transmitting those phone numbers to mobile phone carriers, which then billed the victims for premium text messaging services that the victims never authorized. This "use" of telephone numbers fits within the plain meaning of "use" in 18 U.S.C. § 1028A(a)(1) and the defendants have cited no controlling authority to suggest otherwise.

**A.  Applicable Law**

The Federal Rules of Criminal Procedure provide that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). To satisfy this requirement, an indictment generally "'need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States* v. *Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States* v. *Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks and citation omitted).

"Since federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States* v. *Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (quoting *Downling* v. *United States*, 473 U.S. 207, 213 (1985)). *See also* Fed.R.Crim.P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."). However, the indictment need only allege the 'core of criminality' the Government intends to prove at trial, since the indictment is 'read . . . to include facts which are necessarily implied by the specific allegations made.'" *United States* v. *Budovsky*, 2015 U.S. Dist. LEXIS 127717, *8-9 (S.D.N.Y. Sept. 23, 2015) (quoting *United States* v. *Rigas*, 490 F.3d 208, 228-29 (2d Cir. 2007)). As dismissal is an extraordinary remedy, the allegations of the indictment are assumed to be true when considering a motion to dismiss. *Boyce Motor Lines, Inc.* v. *United States*, 342 U.S. 337, 343 n. 16 (1952); *United States* v. *Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

The interpretation of a federal statute is a matter of law. *See Aleynikov*, 676 F.3d at 75-76 (2d Cir. 2012). Interpretation "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States* v. *Albertini*, 472 U.S. 675, 680 (1985) (internal quotation marks omitted); *see also Smith* v. *United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). If the statute's language is "'plain, the sole function of the courts is to enforce it according to its terms.'" *United States* v. *Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti* v. *United States*, 242 U.S. 470, 485 (1917)); *see also Connecticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature

3

says in a statute what it means and means in a statute what it says there."). Only where there is ambiguity does a "court [] resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity." *United States* v. *Awadallah*, 349 F.3d 42, 51 (2d Cir. 2003); *see also Castellano* v. *City of New York*, 142 F.3d 58, 67 (2d Cir. 1998) ("Where the language is ambiguous, [courts] focus upon the 'broader context' and 'primary purpose' of the statute.") (citations omitted).

### B. Discussion

In a case that involves the appropriation of victims' telephone numbers, without their authorization, and the use of those telephone numbers to falsely represent to mobile phone carriers that the victims had authorized the charging of monthly fees for premium text messaging services, the defendants rely on an out-of-circuit case that is in the minority and ignore the plan meaning of the term "use" in Section 1028A.

While Section 1028A itself does not define the term "use," the Supreme Court has held that "[t]he word 'use' . . . must be given its 'ordinary or natural' meaning, a meaning variously defined as 'to convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *United States* v. *Bailey*, 526 U.S. 137, 145 (1995).[1]  The manner in which victims' telephone numbers were used in the instant scheme fits comfortably within this definition.  The defendants are charged with participating in auto-subscribing schemes that involved obtaining lists of customer phone numbers, including by surreptitiously accessing those phone numbers from Mobile Messenger databases.  The charged auto-

---

[1] While the Supreme Court also noted that the term "use" "poses some interpretational difficulties" and often requires further investigation into the context and structure of the statute in question, *id.* at 143, the context and structure of the statute here supports giving the word "use" its ordinary or natural meaning.  That is because Section 1028A itself was "intended to reduce the incidence of identity theft *and fraud* . . . ." H.R. Rep. No. 108-528, 2004 U.S.C.C.A.N. 779 (2004) (emphasis added).

4

subscribing schemes further involved providing those phone numbers to co-conspirators at content providers, who devised and implemented systems to transmit those telephone numbers to mobile phone carriers with a false indication that the users of those telephone numbers had opted in to the premium text messaging services. Many of the telephone numbers had originally been obtained by Mobile Messenger in the normal course of its business, but were then employed in a fraudulent manner to make money. Courts have found that similar schemes, involving the illegitimate appropriation of legitimately obtained identity information, constitute a violation of Section 1028A. *See, e.g.*, *United States* v. *Reynolds*, 710 F.3d 434, 435-36 (D.C. Cir. 2013) (where defendant was charged with violating Section 1028A by using digital signatures of victims to create corporate resolutions authorizing increased corporate line of credit, noting that "use[] . . . without lawful authority" "easily encompasses situations in which a defendant gains access to identity information legitimately but then uses it illegitimately—in excess of the authority granted").

The defendants, nevertheless, rely in substantial part on the Sixth Circuit's decision in *United States* v. *Miller*, 734 F.3d 530 (6th Cir. 2013). In that case, the defendant sent a bank, in furtherance of a scheme to obtain a loan, a corporate resolution falsely indicating that other members of a limited liability company were present at an LLC meeting and voted to allow property to be pledged as collateral for the loan. *Id.* at 535. The Sixth Circuit held that the manner in which the defendant used the names of the other LLC members was not a "use" for purposes of Section 1028A. *Id.*

The defendants' reliance on *Miller* is misplaced. *First*, the Sixth Circuit noted on multiple occasions that its decision related to situations where the "means of identification" was of person's name, not a telephone number or other identifying information. *See, e.g.*, *id.* at 542

5

(noting that the term "uses" for purposes of Section 1028A "must have practical boundaries, *particularly in cases such as this* where the only 'means of identification' used is a name"); *id.* ("Nothing inherent in the term 'uses,' its placement in the text of § 1028A, or the statute's legislative history clearly and definitely indicates that the term, *as applied to the names of persons*, is broad enough to reach the mere act of saying that the persons did something they in fact did not do."). The Sixth Circuit, thus, expressed a concern at the expansive definition of "use" when applied to a victim's name. But the same concern does not exist in this case, where the means of identification were the victims' telephone numbers. Unique numbers that identify individuals, such as social security numbers of telephone numbers, are more personal to individuals and more difficult to obtain.

*Second*, the defendants cite to no Second Circuit authority for their contention, and indeed, in a different context, the Second Circuit noted that the Sixth Circuit in its *Miller* opinion was in the minority. *See United States* v. *Naranjo*, 645 Fed. Appx. 50, 52-53 (2d Cir. 2016) (on plain error analysis of defendants' Section 1028A conviction for filing false payroll documents that used the names of friends and family members instead of undocumented workers' real names, rejecting defendants' claim that the Government failed to prove that "they used another person's identity by pretending to be that person or received benefits otherwise intended for that person" and noting that "[t]he majority of other circuits that have considered the questions raised by defendants have adopted the government's interpretation") (collecting cases).

The other cases cited by the defendants in support of their argument are equally unavailing. *United States* v. *Spears*, a Seventh Circuit case, was concerned with the definition of "another person" in the context of Section 1028A. 729 F.3d 753 (7th Cir. 2013). *United States* v. *Berroa*, a First Circuit case, involved an identity theft prosecution against doctors who

6

fraudulently obtained their medical licenses and then issued valid prescriptions to patients. 856 F.3d 141, 147 (1st Cir. 2017). The court there held that the term "use" in Section 1028A "require[s] that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf." *Id*. at 156. In the instant case, the fraud certainly involved purporting to take an action on behalf of the victims – namely, signing up for text messaging services that the victims were subsequently billed for. This fits well within the definition of "use" employed by the First Circuit.

Finally, the defendants argue that the instant scheme falls outside of Section 1028A because nothing of value was obtained "in a victim's name," but instead victims were "trick[ed] . . . into paying for an unordered service." Def. Mem. at 9. However, there is no reason why the source of the fraud proceeds—whether it comes from the identity theft victim or elsewhere—has any bearing on whether Section 1028A applies. Indeed, there are ample Section 1028A cases in this Circuit where victims either experienced financial harm or the risk of financial harm. *See, e.g.*, *United States* v. *Greenberg*, 835 F.3d 295 (2d Cir. 2016) (defendant made "unauthorized . . . charges to credit cards of customers"); *Wiltshire* v. *United States*, No 11 Civ. 866, 2011 WL 4336675, at *1 (S.D.N.Y. Sep. 14, 2011) (defendant "us[ed] the names, social security numbers and dates of births of persons in order to obtain [fraudulent] student loan[s]"). The instant case is no different.

## II. THE DEFENDANTS' VAGUENESS CHALLENGE SHOULD ALSO BE REJECTED

### A. Applicable Law

The Government violates due process when it takes "away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson* v. *United States*, 135 S. Ct. 2551, 2556 (2015). But a court must "consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder* v. *Humanitarian Law Project*, 561 U.S. 1, 23 (2010) (quoting *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

A statute is not void, moreover, simply because its meaning is not immediately apparent. *See, e.g., Rose* v. *Locke*, 423 U.S. 48, 49-50 (1975) ("[T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision."); *United States* v. *Herrera*, 584 F.2d 1137, 1149 (2d Cir. 1978) ("Many statutes will have some inherent vagueness, for 'in most English words and phrases there lurk uncertainties.'") (quoting *Robinson* v. *United States*, 324 U.S. 282, 286 (1945)). As the Second Circuit has held, "some ambiguity in a statute's meaning is constitutionally tolerable." *United States* v. *Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999). A statute will survive an as-applied vagueness challenge, even if its meaning is ambiguous, so long as it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States* v. *Petrillo*, 332 U.S. 1, 9 (1947).

**B. Discussion**

The defendants' vagueness challenge to Section 1028A is based on three arguments: (a) if "use" in the context of Section 1028A is given a broad definition, it would mean that Section 1028A could be applied to a broad array of fraudulent conduct; (b) the fact that the Government included Counts Three and Seven in a recent superseding indictment, and not in prior indictments, indicates that the defendants' conduct lies outside of Section 1028A's prohibition; and (c) the Government's theory of liability in the instant case is beyond the "hitherto limited" application of Section 1028A in this District. *See* Def. Mem. at 10-11. These arguments are factually incorrect and not legally supported, and indeed the defendants cite no relevant legal authority suggesting that any of these arguments are a basis to invalidate Section 1028A as unconstitutionally vague.

*First*, the fact that a criminal statute can be used to prosecute a broad range of behavior is not a basis to declare it vague. Moreover, the defendants are incorrect that construing Section 1028A to cover the instant offense would mean that it would also cover every instance of fraud where a defendant dials a victim's telephone number. *See* Def. Mem. at 11. To be clear, the defendants are not charged with violating Section 1028A simply because they caused text messages to be sent to victims without the victims' consent. Rather, the violation of Section 1028A occurred when false representations were made to mobile phone carriers that victims, identified by telephone number, had subscribed to premium text messaging services and agreed to be billed for those services.

*Second*, the fact that Section 1028A was included in a recent charging instrument and not prior charging instruments is not a basis to find the statute unconstitutionally vague. It is not uncommon for similar conduct to constitute a crime under various criminal statutes, and there is

9

no prohibition on the Government seeking a superseding indictment that includes additional counts.

*Third*, the defendants cite four cases within the Second Circuit to support their contention that the instant offense is "not a millrun aggravated identity theft," and that it is the "first § 1028A(a)(1) prosecution for unauthorized 'use[]' of another person's telephone number." Def. Mem. at 11.  As an initial matter, telephone numbers constitute a "means of identification" for purposes of Section 1028A's neighboring statute, 18 U.S.C. § 1028.  *See* 18 U.S.C. §§ 1028(d)(7)(D) (defining "means of identification" to include "telecommunication identifying information"); 1029(e)(1) (defining "telecommunication identifying information" to include "any . . . number . . . that identifies a specific telecommunications instrument").  Moreover, the cases that the defendants cite in support of their argument that this is not a "millrun" Section 1028A case are strikingly similar to the instant case— in those cases, like the case at hand, victims either experienced financial harm or the risk of financial harm.  *See, e.g.*, *Greenberg*, 835 F.3d at 295 (defendant made "unauthorized . . . charges to credit cards of customers"); *Wiltshire*, 2011 WL 4336675, at *1 (defendant "us[ed] the names, social security numbers and dates of births of persons in order to obtain [fraudulent] student loan[s]") (cited at Def. Mem. at 11 n.1).  Accordingly, and based on the cases cited by the defendant, "ordinary people" are on notice that schemes such as the instant scheme are illegal.  *See United States* v. *Nadirashvili*, 655 F.3d 114, 121 (2d Cir. 2011) (in order to avoid a vagueness challenge, a statute must only "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement") (quotation omitted).

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendants' motion to dismiss Counts Three and Seven of the Indictment should be denied.

Dated:    New York, New York
          July 19, 2017

                              Respectfully submitted,

                              JOON H. KIM
                              Acting United States Attorney for the
                              Southern District of New York

                        By:   /s/ Richard Cooper
                              Sarah E. Paul/Richard Cooper/Jennifer L. Beidel
                              Assistant United States Attorneys
                              (212) 637-2326/1027/2212