| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>UNITED STATES,<br>　　　　　　　　　Plaintiff,<br>　　　　-v-<br>DARCY WEDD,<br>FRASER THOMPSON,<br>CHRISTOPHER GOFF,<br>MICHAEL PEARSE,<br>YONGCHAO LIU (a/k/a "Kevin Liu"),<br>JASON LEE,<br>EUGENI TSVETNENKO (a/k/a "Zhenya"), and<br>FRANCIS ASSIFUAH (a/k/a/ "Francis Assif"),<br>　　　　　　　　　Defendants.<br>------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>July 31, 2017</u><br><br>15-cr-616 (KBF)<br><br>OPINION & ORDER |

KATHERINE B. FORREST, District Judge:

　　Defendants Darcy Wedd, Fraser Thompson and Christopher Goff have moved to dismiss Count Three and Count Seven of the Third Superseding Indictment, each of which charge defendants with using consumers' telephone numbers without authorization as part of a fraudulent auto-subscribing scheme, in violation of 18 U.S.C. § 1028A.  (ECF No. 375 ¶¶ 4, 11 (Third Superseding Indictment); ECF No. 407 (Memorandum in Support of Defendants' Rule 12 Motion).)[1]  Defendants argue that the charges are facially deficient because the alleged autosubscribing scheme did not, as a matter of law, involve a proscribed "use" of another's "means of

---

[1] Defendants Wedd and Goff were charged in Count Three; defendants Wedd and Thompson were charged in Count Seven.  (ECF No. 375 ¶¶ 4, 11.)

identification" under 18 U.S.C. § 1028(a)(1). (ECF No. 407 at 2.) In the alternative, defendants argue that if autosubscribing does indeed violate 18 U.S.C. § 1028(a)(1), the statute is unconstitutionally vague as applied to defendants. Id. For the reasons set forth below, the defendants' motion is DENIED.[2]

I. LEGAL STANDARD

Under the Federal Rules of Criminal Procedure, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and must include the "statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). To satisfy this requirement, an indictment generally "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975)). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks and citation omitted).

A defendant may nevertheless challenge a federal indictment "on the ground that it fails to allege a crime within the terms of the applicable statute." United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012). Both the sufficiency of the

---

[2] The facts of this case have been set forth extensively in the briefing and prior Orders issued by the Court and will not be reiterated here.

2

indictment and the interpretation of the applicable statute are matters of law to be decided by the Court.  See Alynikov, 676 F.3d at 76.  In making such determinations, courts must take all allegations in the indictment as true, Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952); United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985), and must read the indictment "to include facts which are necessarily implied by the specific allegations made." United States v. Budovsky, No. 13CR368 DLC, 2015 WL 5602853, at *3 (S.D.N.Y. Sept. 23, 2015) (quoting United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007)).

When tasked with interpreting a federal statute, courts "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." United States v. Albertini, 472 U.S. 675, 680 (1985) (internal quotation marks and citation omitted); see also Smith v. United States, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.").  If the statute's language is "plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)); see also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Only where there is ambiguity does a "court [] resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity." United States v. Awadallah, 349 F.3d

42, 51 (2d Cir. 2003) (internal quotation marks and citation omitted); see also Castellano v. City of New York, 142 F.3d 58, 67 (2d Cir. 1998) ("Where the language is ambiguous, [courts] focus upon the 'broader context' and 'primary purpose' of the statute.") (citations omitted).

II. "USE" OF CONSUMERS' "MEANS OF IDENTIFICATION"

The statute under which defendants were charged in Count Three and Count Seven of the Third Superseding Indictment provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). The phrase "means of identification" means "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). Neither § 1028A nor its neighboring provisions define the term "used."

Defendants contend that they did not "use" consumers' telephone numbers within the meaning of § 1028A when they collected consumers' telephone numbers (often through the normal course of business), caused those numbers to be autosubscribed to premium text messaging services and then transmitted those numbers to mobile phone carriers, which in turn billed the consumers for the premium text messaging services. (See ECF No. 415 at 2 (Government's description of the facts it intends to prove at trial); ECF No. 407 at 9-10 (Defendants' argument

4

that their alleged misconduct does not fall within "§ 1028(a)(1)'s ban on unlawful "uses" of others' telephone numbers). Defendants are wrong as a matter of law.

As "use" is not defined in § 1028A, the Court must "construe it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). The Supreme Court has repeatedly explained that the "ordinary or natural" meanings of the term "use" include: "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" Bailey v. United States, 516 U.S. 137, 145 (1995) (quoting Smith, 508 U.S. at 228-29), superseded by statute on other grounds, 18 U.S.C. § 924(c)(1)(A). Such definitions plainly encompass the alleged conduct here, as defendants would have "employed" consumers' phone numbers, "converted" such numbers to their own ends and "availed" themselves of the phone numbers if they are proved to have engaged in the autosubscription scheme described above.

Admittedly, the term "use" in § 1028A "poses some interpretational difficulties because of the different meanings attributable to it," Bailey, 516 U.S. at 143, and thus the Court must consider "not only the bare meaning of the word but also its placement and purpose in the statutory scheme." Id. at 145  Defendants insist that "use" cannot take on the broad meaning its "ordinary and natural" definitions would suggest because doing so would "endow the statute" with "a 'surprising scope.'" (ECF No. 407 at 5 (quoting United States v. Spears, 729 F.3d 753, 756 (7th Cir. 2013)).) According to defendants, a person "uses" other persons' means of identification within the meaning of § 1028A only if he impersonates or

attempts to pass himself off as one of them, purports to take some action on their behalf or obtains anything of value in one of their names.  (See ECF No. 407 at 8-9.) Defendants argue that they are not alleged to have engaged in any of the aforementioned behavior, and therefore they cannot be properly indicted under 18 U.S.C. § 1028A.  (See id. at 9.)

     This argument fails on several levels.  First, even if the Court were to find that the term "use" were ambiguous as written, § 1028A's legislative history makes clear that § 1028A was "intended to reduce the incidence of identity theft <u>and fraud</u>."  H.R. Rep. No. 108-528, at 9 (2004), <u>reprinted in</u> 2004 U.S.C.C.A.N. 779, 785 (emphasis added).  In addition, the House Committee Report further stated that "[t]he terms 'identity theft' and 'identity fraud' refer to <u>all types of crimes</u> in which someone wrongfully obtains and uses another person's personal data in <u>some way that involves fraud</u> or deception, typically for economic or other gain."  Id. at 4 (emphasis added).  Such language indicates that Congress intended § 1028A to apply more broadly than the narrow set of circumstances proffered by defendants.  Indeed, a D.C. Circuit panel decision affirms § 1028A's expansive scope.  There, the court held that the chief financial officer of a church had "use[d] [another's means of identification] . . . without lawful authority" in violation of § 1028A when he used his legitimate access to church officers' digital signatures to create a fake corporate resolution approving an increase in the church's line of credit.  See <u>United States v. Reynolds</u>, 710 F.3d 434, 436 (D.C. Cir. 2013).  Such facts parallel the allegations here, as defendants purportedly used their legitimate access to consumers'

6

telephone numbers to enroll them in premium messaging services without authorization.

Second, defendants' own citations do not support their claims. Defendants' principal authority in support of their position is United States v. Miller, in which the court held that a defendant had been improperly convicted under § 1028A when, in furtherance of a scheme to obtain a loan, he sent a bank a corporate resolution falsely indicating that other members of a company were present a meeting and had voted to allow certain property to be pledged as collateral for the loan. Id. at 539-42. The Sixth Circuit found that the word "use" was ambiguous and that the legislative history of § 1028A provided "no conclusive guidance," and therefore determined that the rule of lenity required the Court to adopt the defendant's proposed definition of use (which is precisely the definition defendants press here). See id.

Even taking Miller at face value, the Court finds that the defendants here have, in fact, been alleged to have acted on their victims' behalf, which constitutes a proscribed "use" of another's means of identification under Miller's proposed definition. Just as the defendant in Miller had "certainly acted on behalf of" a company when he executed a fake resolution stating that the company's officers had agreed to pledge certain property as collateral for a loan and obtained the loan in the company's name, 734 F.3d at 541 n.5, so too have defendants here allegedly acted on behalf of their victims when they enrolled the victims in premium messaging services for which they were later charged. Though the Miller court

7

found that acting on behalf of the company did not mean the defendant had acted on behalf of the company's officers, see id., there are no corporate layers here separating the victims from the means of identification (i.e., the phone numbers) that were used in furtherance of defendants' purported scheme.

And in any event, Miller itself recognized that its holding and reasoning did not apply beyond a narrow set of circumstances. In several instances, the Miller court limited its holding to cases where a defendant used victims' names in furtherance of a fraud. See, e.g., id. at 541 ("[T]he term [use] must have practical boundaries, particularly in cases such as this where the only 'means of identification' used is a name."); id. at 542 ("Nothing inherent in the term 'uses,' its placement in the text of § 1028A, or the statute's legislative history clearly and definitely indicates that the term, as applied to the names of persons, is broad enough to reach the mere act of saying that the persons did something they in fact did not do."). Miller is thus of limited persuasive value where, as here, a defendant used a telephone number rather than a name in furtherance of a fraudulent scheme. Given that telephone numbers are both more unique and harder to obtain than names, a broad interpretation of the term "use" with respect to telephone numbers would not implicate § 1028A in an more expansive array of fraudulent schemes than Congress intended, while a broad reading of "use" with respect to names might. A narrowing construction with regard to the fraudulent use of telephone numbers is therefore neither necessary nor justifiable.

8

Defendants' reliance on Spears and United States v. Berroa, 856 F.3d 141 (1st Cir. 2017), is similarly unavailing. Spears concerned an entirely different situation—namely, the proper definitions for "means of identification," "transfer," and "another person," as those terms are used in § 1028A. See 729 F.3d at 755-58. And Berroa, like Miller, recognized that the term "use" in § 1028A included "tak[ing] some . . . action on another person's behalf." See Berroa, 856 F.3d at 156. Once again, such a definition plainly encompasses the alleged misconduct here, as defendants allegedly took "action on another person's behalf" whey they enrolled consumers in premium messaging services without authorization.

Finally, Second Circuit case law—though not directly on point—undermines defendants' proposed interpretation of § 1028A. In United States v. Naranjo, 645 F. App'x 50 (2d Cir. 2016), for instance, the Second Circuit found a district court had not committed plain error when it convicted defendants of violating § 1028A by filing false payroll documents that used the names of friends and family members instead of undocumented workers' real names. Id. at 52-53. Importantly, the Second Circuit upheld the conviction even though the Government had not been required to prove that the defendants had "used another person's identity by pretending to be that person or received benefits otherwise intended for that person," id. at 51—elements that defendants now contend are required under the statute. Similarly, defendants' claim that "trick[ing] victims into paying for an unordered service" does not violate § 1028A because nothing of value was obtained from a third party in the victims' names (see ECF No. 407 at 9-10) is undercut by

9

in-circuit case law recognizing that defendants had violated § 1028A when their victims—rather than some unknowing third party—bore the financial burden of a fraudulent scheme. See, e.g., United States v. Greenberg, 835 F.3d 295, 297 (2d Cir. 2016) (defendant made "unauthorized credit card charges to the credit cards of customers of [his] digital retail company"); Wiltshire v. United States, No 11 Civ. 866, 2011 WL 4336675, at *1 (S.D.N.Y. Sep. 14, 2011) (defendant "us[ed] the names, social security numbers and dates of births of persons in order to obtain [fraudulent] student loan[s]").

### III.   DUE PROCESS

Defendants argue that reading § 1028A's ban on the "use" of another's "means of identification" to reach the alleged misconduct here renders § 1028A unconstitutionally vague. (ECF No. 407 at 10-12.) This claim is without merit. The Government violates due process when it takes "away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015). When presented with a vagueness challenge, a court must "consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder v. Humanitarian Law Project, 561 U.S. 1, 19-20 (2010) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)). Defendant's argument fails on these grounds alone.

As the Court explained above, even under the defendants' proposed narrowing construction of the term "use," the conduct alleged in this case falls within § 1028A's reach.  Accordingly, defendants are alleged to have "engage[d] in some conduct that is clearly proscribed," and they therefore "cannot complain of the vagueness of the law as applied to the conduct of others."  Id.

Moreover, even when reading "use" in accordance with its full dictionary definition—as the Court holds that it should—§ 1028A does not raise any constitutional concerns.  A statute is not vague simply because it reaches a broad range of conduct.  See, e.g., United States v. Stofsky, 409 F. Supp. 609, 613 (S.D.N.Y. 1973) ("[RICO] may be broad, but it is not vague.").  And the Court's reading of § 1028A does not, as defendants contend, "encourage 'arbitrary and discriminatory enforcement'" by authorizing near universal application.  (See ECF No. 407 at 10-11 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).  Defendants are not charged with violating § 1028A simply because they dialed (or sent text messages to) third parties' phone numbers in furtherance of an allegedly fraudulent scheme.  Rather, they purportedly violated § 1028A by obtaining victims' phone numbers, using the numbers to subscribe victims to premium text messaging services and falsely representing to mobile phone carriers that the persons affiliated with those numbers had agreed to be billed for those services.  Section 1028A, as construed by this Court, provides more than sufficient notice that such conduct violates its provisions.

11

For the foregoing reasons, defendants' motion to dismiss Count Three and Count Seven of the Third Superseding Indictment is DENIED.

SO ORDERED.

Dated:	New York, New York
	July 31, 2017

_____
KATHERINE B. FORREST
United States District Judge