

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 3, 2017

**BY ECF**
The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: **United States** v. **Darcy Wedd, et al.,**
     **S3 15 Cr. 616 (KBF)**

Dear Judge Forrest:

  We write in response to the evidentiary objections filed by defendant Darcy Wedd (ECF No. 585) on December 1, 2017 (the "Defense Objections"). The Government's position as to each of the objections lodged by Wedd is set forth below.

  GX 101: GX 101 is an email from Marc Ouellette to Fraser Thompson in which Ouellette indicates that he has been auto-subscribed by Digi Mobi, one of the content provider companies in the Zhenya auto-subscribing scheme. This email was admitted into evidence at the last trial in this matter. It is relevant and admissible evidence against Wedd because, as Erdolo Eromo has testified, after discussing the Ouellette email with Thompson, Eromo and Thompson then discussed the incident with Wedd and Paj. (*See, e.g.* Aug. 22, 2017 Tr. at 1472 ("We [Thompson and I] just started talking about strategy. Strategy on how to handle it. He said he'll call Marc Ouelette, and that didn't happen in my presence. But later Darcy Wedd, Fraser Thompson, Paj and I talked about the situation, and he told me he called Marc Ouelette and it was handled."). The email, which Ouellette sent over Mobile Messenger's system in the regular course of Mobile Messenger's business, is admissible as a business record under Rule 803(6). Even if it were not admissible as a business record, however, the email would be admissible for the non-hearsay purpose of showing the effect on the listener – i.e., Thompson – which led to a relevant discussion between Eromo, Thomspon, and Wedd about the incident.

  GXs 801-818: GXs 801-818 are emails that Thompson sent to Eromo requesting payment for various amounts of money owed to Thompson. Each of these exhibits was admitted into evidence at the last trial in this matter. The vast majority of the emails relate to payments owed to Thompson each month for his combined, comingled share of the proceeds of the Zhenya auto-subscribing scheme and the content provider scheme. These emails are highly relevant because Wedd, Thompson, Eromo, and Paj agreed to split the proceeds of the revenue from those schemes equally among the four of them. Accordingly, based on this agreement between the co-conspirators, the amounts owed to Wedd for those schemes were the same as the amounts owed

to Thompson.  As those amounts are included in texts of these emails, the emails are an important part of establishing the amounts of money owed to Wedd for participating in auto-subscribing with Zhenya.  They are therefore relevant and admissible against Wedd.

<u>GXs 853, 857, 1106, 1111</u>:  The Government currently does not intend to offer GXs 853, 847, 1106, and 1111 into evidence at this trial.

<u>GXs 148, 149, and 176</u>:  GXs 148, 149, and 176 were all admitted into evidence at the last trial in this matter.  These documents are email exchanges in which Wedd participated, and which pertain to unauthorized and, at times, criminal activity by Zhenya in the Premium SMS industry.  Each of these email exchanges is highly probative of the fact that when the Zhenya auto-subscribing scheme began, Wedd was aware that Zhenya had engaged in aggressive, non-compliant, and criminal activity in the past, including auto-subscribing specifically.  GX 176, for instance, contains a discussion of Zhenya auto-subscribing a Canadian regulator, Jason Kerr, in July of 2011.  There is no question that Wedd's knowledge of Zhenya's prior practices, including prior occasions when Zhenya auto-subscribed, is directly relevant to his knowledge of and participation in the Zhenya auto-subscribing scheme charged in the indictment.  The defense will have the opportunity to cross-examine the witnesses about these emails, as they did at the last trial, and argue that the emails "did not clearly involve auto-subscription."  (*See* Defense Objections at 2.)  The emails, however, are properly admissible and there is no basis to exclude them under Rule 403.

<u>GXs 202, 202A, 202B</u>: GXs 202, 202A, and 202B relate to the lawsuit filed against Tatto in 2009 by the Washington State Attorney General, which alleged that Tatto engaged in deceptive marketing practices through its marketing of a Premium SMS product over Mobile Messenger's full service platform.  At the last trial, these documents were all admitted into evidence, and multiple different witnesses testified about the Washington State Attorney General lawsuit.  Among other things, Lin Miao testified that when Tatto was sued by the Washington State Attorney General, he turned to Wedd for help in resolving the lawsuit, and Wedd in turn referred him to Mobile Messenger's general counsel, Alan Sege.  GXs 202, 202A, and 202B are thus relevant to establishing the relationship of trust and confidence between Miao and Wedd, which ultimately resulted in Miao having an open conversation with Wedd about auto-subscribing with Tatto.  Moreover, Wedd's knowledge of Tatto's prior business practices, including an instance in which Tatto was sued for having engaged in deceptive marketing practices on one of Mobile Messenger's platforms, is directly relevant to Wedd's knowledge and participation in the Tatto auto-subscribing scheme charged in the indictment.  These exhibits are thus admissible and should not be excluded under Rule 403.

<u>GXs 155, 156, 948, and 901</u>: These customer complaints, which were all admitted into evidence at the last trial, are examples of customers complaining about having been auto-subscribed by either CF Enterprises or Digi Mobi, the content provider companies in the Zhenya auto-subscribing scheme.  They are relevant and admissible to prove that Zhenya was, in fact, auto-subscribing through these content provider companies, which is a fact that was challenged by the defense at the last trial.  The Government will make the appropriate redactions to any unfairly prejudicial language contained within these exhibits before offering them into evidence.

GXs 909 and 912: These customer complaints, which were also admitted into evidence at the last trial, were made by two of the victims who are expected to testify at this trial. These customer complaints, as at the last trial, should be admitted under Rule 807. *See, e.g.*, *FTC v. Instant Response Systems, LLC*, No. 13 Civ. 00976 (ILG)(VMS), 2015 WL 1650914 (E.D.N.Y. Apr. 14, 2015) (finding customer complaints to the Better Business Bureau admissible under Rule 807). The complaints are inherently trustworthy because they are based on the consumers' personal knowledge shortly after the events they reported, are internally consistent in that they report the receipt of unsolicited text messages, were made by people who do not know each other, are consistent with the other documents and testimony in the case regarding the auto-subscription scheme, and were made with the apparent expectation that investigative or other action would be taken in response to the complaints. The complaints are also highly probative on the question of whether cell phone users were autosubscribed, particularly because five years have passed since the events in this case so that the complaints are likely even more accurate renditions of the events than live testimony. Finally, the Government has provided notice to the defense of the complaints it seeks to use. Again, to the extent the complaints contain unfairly prejudicial language, the Government will make the appropriate redactions to them before offering them into evidence.

GXs 905, 911, 913-942, 947, 949: These exhibits, which were all admitted into evidence at the last trial, are phone bills of victims who were auto-subscribed by either Tatto or Zhenya. They are relevant to proving that Tatto and Zhenya were, indeed, auto-subscribing. They are plainly business records under Rule 803(6), which is a fact the defense stipulated to at the last trial. Accordingly, they are not hearsay, they are relevant, and there is no basis to exclude them.

GXs 905, 912, 944: The defense further objects to these victim-related exhibits, which were also admitted into evidence at the last trial, on the ground that the auto-subscribing activity reflected in these exhibits did not take place over Mobile Messenger as the aggregator. The fact that the auto-subscribing activity occurred through a different aggregator, however, is irrelevant, because it was all conducted by one of the Tatto companies, Shaboom Media. As the defense is aware, the Tatto-related counts in the indictment encompass all of the auto-subscribing activity conducted by Tatto during the charged time period, whether through Mobile Messenger or through another mobile aggregator. This objection is thus meritless.

GX 999: The Government will remove the word "victim" from GX 999.

GX 528 and 528A: Jonathan Murad bank records are relevant generally to establish the payments made to him by Michael Paj in connection with the auto-subscribing activities, and to complete the picture of the money flow in this case, including the timing of when Paj made

various payments.  These records were admitted at the last trial and should be admitted again here.

          Respectfully submitted,

          JOON H. KIM
          Acting United States Attorney


By:   /s/ Sarah Paul
      Sarah E. Paul/Richard Cooper/
      Jennifer L. Beidel
      Assistant United States Attorneys
      (212) 637-2326/1027/2212

cc:     Counsel for Defendant Wedd (by ECF)